OPINION of the Court, by
Judge Owsley.
— Thi* is a contest between adverse conflicting land titles. The appellee derives title through William Rowan, dec’d» He claims a part of the land as one of the heirs of the decedent, and the balance as a purchase from the other heirs. William Rowan, dec’d. held the title by a patent obtained from the commonwealth, upon a survey-executed in his own name, in virtue of an assigned, treasury warrant entry made in the name of Abednig© Carter.
Before we investigate the validity of the entry under which the appellee claims, it will be proper to notice the objections made in argument to the appellee’s right as heir, and to the validity of the survey and patent under which he deduces his title, and as to the propriety of a. decree being made without other parties being before-the court.
It is first objected that the appellee has not proved that those from whom he purchased and himself are. the legal heirs of William Rowan, dec’d. Had the^ right as heirs been denied by the answer of the defendants in the court below, it is clear that without proof to that point, no decree could have been regularly made in favor of the appellee. But it seems the defendant© in that court did not intend to question the right of the, appellee as heir. All of the defendants but Oldham,, by their answer impliedly admit the right as heir, but deny the appellee has procured from the other heirs a. regular transfer of their rightand Oldham by his answer does not deny the fact, nor is it believed he intended to put it in issue. Under such a state of pleading*; in a contest in chancery, where the validity of the entry, survey and patent are expressly traversed, we cannot suppose the decree of the court below should be reverá». *535 «d because the complainant in that court may not have proven he and those from whom he purchased are the legal heirs.
The preemption of P was Curvejed m Several parcels, and at different periods of time, previous to the date oí the adj bring entry— the loweimoft corner of P is the one to he adjoined.
The furveys of the pre empw tion calling t-o -adjoin the feu tlement furvey, could have been found by* reafonable in. ^uiry if the ieU tlement Iurvey was notorious.
A ftation hav* ing been ere&. ed on chat lur-vey, and linger bimfeif being resident thereon, the lines of the fur. vey might have been found by reafonable inquiry —Accor* vol 2, Kennedy •vs Bruce, 373 —vol i, fPiifon ‘vs M'Gee, 34 —Green ve>Jui Watjun> i©7— Hard in, Eft ill vs Hart's heirs^ 57 b-M'MiU len vs Miller,# 494. — Moore's heirs vs Green# 3»*
The iurvey directed to adjoin the preemption , fur-veys, and thea at right angles to the general courfe of the bafe.
*535 it is secondly objected that the entry Under which the appellee derives title was not assignable, and hence it is inferred that the survey and patent in the name of the assignee William Rowan, dec’d. are void» Were it admitted that the entry was not at law assignable, the conclusion from thence deduced in argument would not, we apprehend, necessarily follow. It is true the act of 4 779 contains no provision making entries assignable ; but warrants and plats and certificates of surveys were made assignable, and the act contains no inhibition against sales by the holders of entries. A sale and assignment of an entry, therefore, though it may not transfer a legal title, would clearly vest an equitable right in the assignee. In such a case, were the survey made and patent obtained in the name of the seller of the entry, by a court of equity he would be compelled to convey the legal title. If then in a case thus circumstanced equity would compel the assignor to convey, the question occurs, will a survey made and patent obtained in the name of the assignee, who is equitably entitled to the land and in whose favor a conveyance would be decreed if the title had been procured in the name of another, be deemed void? We apprehend it should not. Why, it may be asked, should it be avoided ? There is no statutory provision declaring a survey and patent thus obtained void. Who can have sustained any injury from it? Surely the assignor has notfor he has at least in equity, previously disposed of his interest in the entry. The commonwealth has not, because she has previously disposed of the land to the assignor. And it is evident the adverse claimant can sustain no injury, for no land Is claimed by this suit which is not contan ed in the entry.' Hence we conclude that the survey and patent are not void.
This leads us to the inquiry, whether Carter, in whose name the entry was made, should have been made a party to this cause ? ,
' It is contended that from analogy to those cases where it has been held the assignor of an equity should be a party in a suit by the assignee to obtain a title, the assignor of (he entry should m this case have been before *536 the court. It is conceived, however, this case cannol be'brought within the application of the rule which governs those cases : for although the appellee has brought his suit in chancery, the right in contest is as well legal as equitahle. The legal title is clearly in the appellee, and whether he holds it in trust for any other person, cannot we conceive be material in this contest. A sale and transfer by the appellee would vest the title in the purchaser, and we apprehend a decision against him on the merits of his claim would be conclusive against any person holding an interest in trust. We areof opinion, therefore, the appellee has shewn a sufficient right under a valid patent, to maintain a suit in his own name, without making the assignor of the entry a party.
Entry on Ea, ton's creek, a branch of (he Rolling Foilc of Salt river, beginning about half a mile from the rnourh &c. invalid, becaufe the •creek was not notorious by. that name.
Who ought to be parries to a bill in equity.
Perfons claiming as heirs, muft prove themfelves entitled to fue in l hat capacity, unlefs the defendants admit it exprefsly or by implication.
Fa£fcs not charged to be within the knowledge of the defendants, nor prefumed to be to, are not taken for con» feiTed if the an. fwer is Accord. Moore •vs Lockett, vol, », 69 — Cowan vs Price, vol I, 173 Kennedy's heirs vs Mere, iiitb, ante 4C6.
We will next inquire into the validity of the entry under which the appellee claims. It is as follows :
“ April the 8th, 1784 — Abednigo Carter, assignee of Elias Barbee, enters 1100 acres upon a treasury warrant, No. 14561, onPottinger’s creek, beginning at the lower corner of Pottinger’s pre-emption, on the opposite side of the creek from his settlement, and running up the same line and out towards the knobs for quantity.” _ _ ■ _
_ _ _ Previous to the date of this entry, Pottinger had obtained from tiie court of commissioners a certificate for a settlement and pre-emption of 1400 acres, and located the same on Pottinger’s creek. But as the objects called for in the entries of Pottinger are not sufficiently identified by the proof in the cause, and as the surveys made thereon were executed before the date of the ap-pellee’s entry, an inquiry into Pottinger’s entries becomes unnecessary to a decision ot this cause. The pre-emption of Pottinger was purveyed in three surveys, the first bears date the 11th December 1782, the second the 12th December 1782, and the third the 11th December 1783. Pottinger’s creek is delineated on the connected plat as running nearly a/ west course. 1 he settlement survey of Pottinger is made mostly on the north side of Pottinger’s creek. The survey ot Pottinger made on the llth December 1782, on his pre-emption, adjoins the settlement on the north. The survey made the 12th December 1782, adjoins the southeast corner of the settlement, extending south and eastwardly for tile quantity, and presenting a corner on the opposite *537 ■side of the crec-k to the southeást corner of the settlement survey. And the survey made on the 11th December 1783, adjoins the settlement Survey on the south nearly the whole length of the south boundary, and extending across the creek for the quantity, presenting a Corner, the lowermost on the creek and opposite to the settlement. Which of these surveys, therefore, the entry of the appellee should be made to adjoin, is the first point for consideration.
It was contended in argument the entry should begin at the southeast corrier of the survey made the 12th of December 1782, because it is urged that survey presents a corner equally fitting the call in the entry, and from the length of time it had been made was better calculated to have attracted notice than the survey made in 1783. We are of opinion, however, the call in the entry to begin at the lower corner of Pottinger's pre-emption, more properly applies, and should be construed to adjoin- the latter of those surveys. The whole of those Surveys constitute Pottinger’s pre-emption. They were all made before the date of the appellee’s entry, and though the survey presenting the lowermost corner opposite the settlement was last made, they were all of record, equally demanding notice at that period. As, therefore, the appellee’s entry calls to adjoin Pottinger’s pre-emption survey, the question occurs, did that sur¿ ve}' at the date of the entry possess the requisite description or notoriety to give validity to the entry? If the notoriety of Pottinger’s settlement survey is sufficiently established, it is clear the description contained in the pre-emption certificates of surveys Would lead with absolute precision and certainty to the beginning : for each of those surveys calls to adjoin the settlement corners, from which no difficulty could arise in ascertaining the beginning.
Although no witness whose deposition has been ta® ken in this cause speaks expressly of the boundary of the settlement survey having been notorious when the entry was made, from the facts proven wé have no doubt but such notoriety should be interred. The circumstances that Pottinger’s creek had acquired that name long before the entry was made *; that Pottinger settled1’ upott the land in the winter of 1‘778, and has resided thereott «ver Since ; that Pottinger’s station was made thereon* *538 in 1781, and has been generally known ever since, de*e munstrate conclusively that a subsequent locator, by the exercise of reasonable diligence, might with certain* ty have found the lines of the settlement survey at the date of the entry; and when found, no difficulty could have occurred in finding the beginning.
We are therefore of opinion the appellee’s is a valid entry, and should be surveyed by beginning at the southwest corner of the 200 acre preemption survey, extending thence up the creek with the line of that survey and the survey of 400 acres adjoining thereto, so far as that lines at right angles (southwardly) to the general course-of the base, will include the quantity. By this mode of surveying, all the land in contest will be included in the appellee’s claim. Unless, therefore, the appellants can shew a right under a valid entry of elder date, they cannot succeed.
They claim under the following entry : “ May 29, 1780 — Samuel Oldham enters 4000 acres upon treasury warrants, on a creek ■ mptying in on the north side of the Rolling Fork of Salt river, known by the name of Eaton’s creek, beginning about half a mile from the mouth of said creek, and running up both sides for quantity.”
On this branch of the cause, it need only be observe ed, that the evidence does not sufficiently prove the creek upon whteh the survey has been made was at the date of the entry called Eaton’s creek. The entry therefore cannot be maintained.
Decree affirmed.-